## WILLIAMS vs. THORN and others.

### PATERSON vs. WILLIAMS and STRONG.

Where T. & F., who were the owners of one third of the city mills, and who owed W. $10,000 for the purchase money thereof, mortgaged their third of the city mills to W. in January, 1833, to secure the payment of $4000 of the purchase money, and at the same time gave to him an absolute deed of certain lands called the city lots, which deed was intended merely as a security for $6000, the residue of the purchase money for the city mills; and in 1834 S., who was the owner of one third of the city mills, took an assignment of the $4000 mortgage, and a conveyance of the city lots, from W., and caused the mortgage upon one third of the city mills to be foreclosed, and bid in the mortgaged premises at the sale, under the decree, knowing at the time he took the conveyance of the city lots, that W. held the legal title only as security for the $6000; and S., subsequent to 1834, mortgaged his interest in the city mills and the city lots to W., to secure the payment of $10,000; Held, that the last mentioned mortgage was an equitable lien upon the city lots only, to the extent of the $6000 and interest, after deducting therefrom the rents and profits of the city lots, subsequent to the time when W. took possession of those lots under the deed of January, 1833.

Held also, that as S. was the assignee and owner of the $4000 mortgage, at the time he gave the $10,000 mortgage to W., a purchaser of the city mills under a decree for the foreclosure of the latter mortgage, would take the property discharged of the lien of the $4000 mortgage, and of the interest which S. had acquired in the mortgaged premises under his decree of foreclosure.

A mortgagor of land, who holds a prior mortgage upon the premises at the time he mortgages his interest in the property to another, cannot set up such prior mortgage as against his own mortgagee.

THIS case came before the chancellor upon an appeal from a decree of the vice chancellor of the seventh circuit. The bill in the original suit was filed in November, 1837, to foreclose a mortgage given to the complainant by J. Strong, one of the de-

fendants, on the 27th of April, 1836, upon two parcels of land in Rochester; the one parcel called "the city mills," and the other parcel spoken of by the witnesses as "the city lots." This mortgage, together with the bond of Strong, was given to secure the payment of $10,000, in September, 1837, with interest. The cross-bill was filed by T. J. Paterson, one of the defendants in the original bill, and who claimed to be the owner of the parcel of the mortgaged premises called the city lots, for the purpose of having an absolute deed, of the city lots, given to H. B. Williams in January, 1833, declared to be only a security in the nature of a mortgage; and that the complainant in the cross-bill might be permitted to redeem the same, upon payment of whatever was equitably due, after deducting the rents and profits of the premises from the time when Williams took possession thereof, in June, 1834. Paterson and Strong, and Suydam, Sage & Co. who were subsequent mortgagees of the city mills, answered the original bill; and replications were filed to their several answers. The defendants in the cross-bill also put in their joint and several answer to the same; to which answer a replication was filed. The bill and cross-bill were afterwards heard together, before the vice chancellor, upon pleadings and proofs. He decided and decreed that the city lots were primarily liable for the whole amount of the principal due upon the mortgage from Strong to Williams, with interest and costs, and that those lots should be first sold, to satisfy the amount for which they were first liable; and that if the proceeds of the sale were not sufficient for that purpose, the city mills should be next sold, to pay the deficiency. He also decided that Paterson was not entitled to costs. From this decree Paterson appealed to the chancellor.

*F. M. Haight,* for the appellant.

*G. H. Mumford,* for H. B. Williams.

*O. Hastings,* for J. Strong.

*P. Smith,* for Suydam, Sage & Co.

Williams v. Thorn.

THE CHANCELLOR. To understand the equities of the parties in this complicated case, it is first necessary to obtain a correct understanding of the facts, as they are presented by the pleadings and proofs. It appears that on the 1st of September, 1832, J. Strong, one of the defendants, and M. Strong, together with Williams, the complainant in the original bill in this cause, were joint owners, as tenants in common, of the parcel of the mortgaged premises called the city mills; and were copartners in the milling business. At that time Williams sold his third of the city mills, and his interest in the milling business, to Thorn and Frink, for $10,000, payable in five years from the 10th of September, 1832, with interest semi-annually. And to secure the payment of such purchase money, Thorn and Frink gave to Williams their bond and warrant of attorney, upon which a judgment was immediately entered; with liberty to take out execution for the whole amount, upon failure to pay the semi-annual interest as it should become due, from time to time. In January, 1833, Thorn and Frink complained that the judgment was an injury to their credit; and it was then agreed between the parties that the judgment should be cancelled. And, in lieu thereof, Williams agreed to take a bond and mortgage upon their third of the city mills, to secure the payment of $4000 of the purchase money originally embraced in the judgment, payable at the same time, with semi-annual interest; and to receive a conveyance of the city lots as a security for the payment of the other $6000, in the same manner. In pursuance of this agreement the judgment was discharged. And on the 23d of January, 1833, Thorn and Frink, and their wives, gave to Williams their bond and mortgage upon the third of the city mills, conditioned to pay the $4000 on the 10th of September, 1837, with interest thereon semi-annually. On the same day they also gave to Williams an absolute deed of the city lots; which deed was acknowledged on the 24th, and was recorded as a deed on the 25th of January, 1833. The consideration mentioned in the deed was $6000. Subsequent to the execution of this deed, Williams gave to Thorn and Frink a contract to convey the city lots to them, upon the payment by them of $10,000, on or

before the 10th of September, 1837, without interest. This agreement bears date on the 25th of January, 1833, and was acknowledged by Williams only, in September, 1837; subsequent to the time when it became forfeited, if it was originally executed and delivered to them before that time. But there is no subscribing witness to this contract; nor have I been able to find any proof that it was delivered to Thorn and Frink previous to the assignment of their property. For what is said in the answer to the cross-bill, in relation to this contract, does not appear to be responsive to any allegation in that bill.

That this contract to reconvey was not the original agreement upon which the city lots were conveyed to Williams, on the 23d of January, 1833, is perfectly evident from the proof in the case. Although Williams, in his answer to the cross-bill, denies that he gave to Thorn and Frink any written defeasance, at the time of the execution of the deed, he admits, in a subsequent part of the answer, that there was an understanding between him and them that if they should punctually pay the $10,000, and semi-annual interest, they should have a conveyance of the city lots, and a discharge of the $4000 mortgage upon the city mills. He also says he is unable to state how or when in particular, this understanding originated. But the testimony of Frink shows that it originated at the time the bond and mortgage, and the deed of January, 1833, were agreed to be received as substituted securities, in place of the judgment, for the payment of the $10,000 and the annual interest. And in the affidavit made by Williams, in February, 1835, he recollected that the real understanding, between him and Thorn and Frink, was substantially as stated in Frink's deposition, and that they continued to pay the semi-annual interest on the whole $10,000, up to and including the payment which fell due on the 10th of March, 1834. This was undoubtedly the old and original understanding between Williams and Thorn and Frink, referred to in the last memorandum in exhibit A. Hence the irresistible conclusion is, that the old and original understanding, upon which the deed and bond and mortgage of January, 1833, were executed, was that the mortgage should be a security upon the

city mills for $4000 of the purchase money, and semi-annual interest, and the deed a security upon the city lots for the other $6000, and semi-annual interest. This subsequent contract, therefore, to convey the city lots to Thorn and Frink, upon the payment of $10,000, in September, 1837, without interest, and which amount they agreed to pay in addition to the $4000 bond and mortgage, if they in fact executed that contract, could not convert this deed, which in equity was nothing but a mortgage, into an absolute and unconditional deed.

Previous to the filing of Strong's bill to foreclose the $4000 mortgage, in September, 1834, that mortgage had been absolutely assigned to him, by Williams. And the deposition of Hastings shows that the amount of the purchase money due to Williams, for that mortgage, was included in the $10,000 mortgage subsequently given to him by Strong, and for the foreclosure of which the original bill in this case was filed. At the time of the conveyance of the city lots to Strong, therefore, on the 27th of April, 1836, the only equitable claim which Williams had upon those lots was the $6000, and the semi-annual interest thereon from the 10th of March, 1834; after deducting therefrom the net rents and profits subsequent to the 14th of June, in that year, when Williams took possession of the city lots. And as Strong took his conveyance of the city lots with full notice of all the facts, he obtained no other interest therein, as against the owner of the equity of redemption, than Williams himself had. The mortgage back to Williams, therefore, was an equitable lien upon the city lots to that extent only. And the subsequent rents and profits received by Strong, or those claiming under him, while he and they continued in possession under the conveyance of Williams, after deducting necessary expenses, for repairs, insurance and taxes, should be applied to reduce the amount of that lien, and of the subsequent interest.

The title of Paterson to the city lots, subject to Williams's lien thereon as mortgagee, under the deed of January, 1833, is derived under the assignment from Thorn and Frink of all their property, to Smith and Stevens, in June, 1834, for the benefit of the assignees and of Paterson, as creditors; those assignees having

subsequently sold and conveyed the assigned property to Paterson. And I do not see that any equity, against Paterson as the owner of the equity of redemption in the city lots, can arise out of his covenant of the 5th of May, 1836. The object of that covenant was to carry into effect his agreement with Strong, of the 13th of the preceding February, to convey all the original interest of Thorn and Frink in the city mills to Strong, in case the same should not be redeemed from the sheriff's sale. Both parties at that time knew that Strong was the owner of the $4000 bond and mortgage; and if it was intended, by the parties, that Paterson should pay off and discharge the mortgage which Strong himself held upon Thorn and Frink's original third of the premises, in addition to conveying to him the title which was expected to be obtained through the sheriff's deed, it would have been proper to have inserted a clause to that effect in the contract, or in the covenant of the 5th of April, 1836. That covenant of Paterson also was a personal covenant, or at most a covenant running with the land; and it will not be discharged, if he is in fact liable thereon, to Strong or to his subsequent mortgagees, by the decree which has been made in this cause. The proper way to protect the rights of the owners or mortgagees of the interest of Thorn and Frink in the city mills, which Paterson assumed to guaranty, is to declare the decree to be without prejudice to the rights of any of the parties to the suit, or of the purchaser under the decree, to any claim they may have, either at law or in equity, for or on account of the covenant contained in the assignment of the 5th of April, 1836.

I cannot see, however, that any one, except the defendant Strong, has any interest in that covenant; for he was the owner of the $4000 bond and mortgage at the time he gave the bond and mortgage of $10,000 to Williams. His subsequent purchase in of the premises under the former decree, therefore, will not prevent the purchaser under the decree in this suit, from obtaining a perfect title to the city mills, or to the two-thirds thereof which belonged to J. Strong in April, 1836, discharged of that mortgage, and of any interest which Strong may be supposed to have acquired by his subsequent purchase under a former decree. In other

words, a mortgagor of premises, who himself held a mortgage thereon at the time he mortgaged his interest in the premises to another, cannot set up such prior mortgage, or any interest he has acquired under the same, against his own mortgagee, or any person claiming under him. And a purchaser, under a foreclosure of the mortgage given by Strong, will take the premises discharged of any incumbrance thereon which Strong, either as mortgagee or otherwise, held at the time he mortgaged such premises. And for the same reason Suydam, Sage & Co., who took a mortgage upon the city mills, from J. Strong and M. Strong, subsequent to the time when J. Strong bid in the premises under his decree, have no equities arising out of Paterson's covenant of the 5th of April, 1836. For their interest in the mortgaged premises is the same, in every respect, as if Paterson himself had paid off the decree upon the $4000 mortgage. The claim against Paterson, therefore, under this covenant, is one which is personal to Strong ; for which the latter must seek his redress in a different form. And as he set up no claim under that covenant, in his answer either to the original bill or to the cross-bill, he had no right to introduce the covenant in evidence ; it being wholly irrelevant to any matter which was in issue, either in the original or in the cross-suit.

The decree which should have been entered in this case, in reference to the amount due upon the mortgage for the foreclosure of which the original bill was filed, should have been to permit the defendant Paterson to redeem the city lots, upon paying the amount to which Williams would have been entitled, as against the city lots, if he had not transferred his interest therein to Strong, but had continued in possession thereof himself ; and to charge the residue of the $10,000 mortgage, and the costs of foreclosure, upon the city mills. And such decree should have directed that if Paterson did not redeem the city lots, by paying what was justly chargeable thereon, previous to the sale, that the city lots should be sold first ; that out of the proceeds of such sale the master should deduct the expenses of advertising and selling, &c., and the amount which was justly chargeable on that part of the mortgaged premises, and apply it on the

Williams *v.* Thorn.

decree; and should pay the residue of such proceeds, of the city lots, to the defendant Paterson, as the owner of the original equity of redemption in such city lots under the deed of January, 1833; which deed was intended as a security, in the nature of a mortgage, for the $6000 and interest only. The decree should then have directed a sale of the city mills, or of the part of them which belonged to J. Strong on the 27th of April, 1836, either as the owner of the decree upon the $4000 mortgage or otherwise; and that the master should, out of the proceeds of that sale, pay the balance due to the complainant Williams upon his decree, including his costs in the original suit, to be taxed; and that the master should bring the residue of the proceeds of the sale of that part of the mortgaged premises into court, to abide its further order.

The complainant Williams having set up an inequitable claim to the whole fee of the city lots, under the absolute conveyance of January, 1833, and having failed in that claim, he is not entitled to have the costs of the litigation upon the cross-bill, charged upon the proceeds of the sale of the city mills, as against Suydam, Sage & Co. and other junior incumbrancers. And as Paterson has succeeded in establishing the claim set up in his cross-bill, and in his answer to the original bill, as against the false claims made by Williams and Strong, he is entitled to his costs against them upon this appeal, as well as in the original suit.

The decree appealed from must be reversed, and a new decree must be entered, upon the principles above suggested. And if the parties cannot agree upon the amount which is chargeable upon the city lots, a reference must be made, to a master, to ascertain the amount due; after deducting the rents received by Williams, and by Strong, or by those claiming under them, since the 14th of June, 1834, or which they might have received by proper care; allowing them, however, for taxes, insurance and repairs, as an offset against such rents, as directed in the former reference.