that there a general assignment immediately followed the transfer attacked, and the rule laid down in the case of Berger v. Varrelmann, 127 N. Y. 281, 27 N. E. Rep. 1065, was applicable; and the fact of that decision is, as I understand it, that where by any method or scheme in which a general assignment for the benefit of creditors is a part a greater preference is allowed than is provided for by the statute, with intent to evade the statute, such a scheme is void, under the provisions of the Revised Statutes in reference to transfers made with intent to hinder, delay, and defraud creditors. Thus the presiding justice, delivering the opinion of the court, says: "Now, in case a party contemplating making an assignment for the purpose of evading the restrictions of the assignment law knowingly makes transfers of his property as security to creditors in excess of that which is allowed by the assignment law, and thereby attempts to evade the provisions of the statute, such transfer is made with intent to hinder, delay, and defraud his creditors, and therefore, under the express words of the statute, it is void, whether the transferee has knowledge of such intent or not." This rule, however, does not apply where the making of an assignment is not contemplated, and where no assignment was ever made; and Manning v. Beck, supra, as I understand it, expressly holds that the statute of 1887 does not affect any transfer that is not contained in the general assignment, or made in contemplation of the making or as a part thereof. Applying the rule thus stated, I am unable to see that the debtors in this case did anything except what they had a lawful right to do, and intended to do nothing except what they did, and that they did not intend to hinder, delay, or defraud their creditors. The defendants should therefore have judgment, with costs; decision and judgment to be settled on notice.

C. Donohue, for appellants.

S. B. Brownell, for respondents.

PER CURIAM.   Judgment affirmed, with costs, on opinion of the court below.

---

(70 Hun, 498.)

BARBER et al. v. PALMER et al.

FIRST NAT. BANK OF CHAMPLAIN v. SAME.

(Supreme Court, General Term, Third Department.   July 8, 1893.)

1. MORTGAGES BY PARTNERS—PRIORITY.
    The lien of a mortgage made by one partner on his interest in the partnership property is subordinate to a subsequent mortgage by the firm to secure a firm debt.

2. SAME—WHAT INTEREST OF PARTNER INCLUDED.
    Where a partner joins his copartner in a mortgage on the partnership property without reservation, the mortgage includes his interest under a prior mortgage to himself on his copartner's interest in the premises.

Appeal from circuit court, Clinton county.

Two actions, one by Charles O. Barber, George E. Barber, and Herbert Barber against George W. Palmer and others, and the other by the First National Bank of Champlain against George W. Palmer and others, to foreclose mortgages.   The two actions were tried together by the court, without a jury, and plaintiffs in each case had judgment on the findings of the trial court.   Defendants appeal.   Affirmed.

The opinion of Mr. Justice KELLOGG, at special term, is as follows:

The two actions above entitled were tried together, the issues being practically the same, and the material evidence the same. These actions are brought to foreclose mortgages,—one made by G. W. & F. Palmer & Co. to Charles O. Barber and others; one made by the same party to the First National Bank of Champlain. Both mortgages are signed by George W. Palmer, Frank Palmer, Owen A. Palmer, and Charles G. Palmer, being all the copartners in the firm of G. W. & F. Palmer & Co.

The defendant Edwin G. Moore, as trustee, etc., makes answer that he is the owner of a mortgage given in 1887 for $1,000 by Owen A. Palmer to Frank Palmer, on an undivided one-twelfth of this land covered by plaintiffs' mortgage, and the lien of this mortgage upon the fractional part must take precedence to plaintiffs' lien. The defendants William M. Foote and others, executors, answer also that they are the owners of a mortgage given by Charles G. Palmer to Frank Palmer in 1887 for $1,000, on an undivided one-twelfth of the land covered by the plaintiffs' mortgage, and that the lien of this mortgage must also take precedence of the lien of plaintiffs' mortgage. These two mortgages, set forth in the answers of these defendants, antedate the mortgages of the plaintiffs in both of these actions, and they were both recorded in Clinton county clerk's office before either of the mortgages here sought to be foreclosed was given. In the mortgage running to the plaintiff the First National Bank of Champlain, reference is made to the fact of the existence of such mortgages, but the language used is simply declaratory of the fact which the record makes constructive notice of, and, the fact being declared in the mortgage, neither adds to nor detracts from the right of parties.

We are of the opinion that the contention of the defendants cannot prevail, for the reasons: First, it is undisputed that this copartnership was formed in June, 1879; that at that time the lands in question became with other lands the property of the copartnership, and formed the staple of their stock in business. The business of the copartnership was the making of iron, using charcoal in Catalan forges, and covering a large wooded territory, of necessity. It makes no difference in whom the title to the realty stood, so long as it was conceded to belong to the copartnership. It is clear from the evidence—indeed, is undisputed—that at the organization of this company, in June, 1879, the land became the property of the company, and was ever afterwards used in its business. It is hardly worth while to inquire what the interest of each copartner was at the date of the organization; and in view of the facts that these copartners, George W. Palmer, Frank Palmer, Owen A. Palmer, and Charles G. Palmer, at that date agreed upon the terms of the copartnership, and the business and the property which should belong to it, and agreed that the lands in question, with other lands, should belong to the company so formed, and from that date such lands were used and treated always as the property of the copartnership, it is hardly worth while to inquire upon what terms the said Owen and Charles were to increase their shares in the copartnership by acquisition from either of the other partners. Whatever changes were contemplated or afterwards carried into effect by original agreement, or otherwise, the ownership of the property never changed,—it was always the property of the copartnership. While the interest of each copartner might increase or diminish at any time by agreement among themselves, the copartnership remained intact. Any deed or other evidence of transfer from one to the other did not affect the company, or the title of the company, as a whole, to the assets, real or personal. The effect could only be to determine, as between themselves, the rights to profits or liability for losses, and the share of each in the surplus after the company's debts were discharged and the copartnership equities adjusted.

The claims of these defendants, therefore, that the mortgages given by Owen and by Charles to Frank Palmer were the outcome of an agreement between these parties, made at the organization of the copartnership, or later, to purchase a portion of the interest of Frank Palmer in the business or the property of the copartnership, and by so much increase their holding, and diminish the holding of Frank Palmer in such copartnership, has no bearing to detract from, or give additional force to, the lien of such mortgages. It must be

considered at this date almost elementary law that the lien of a mortgage made by one copartner upon his interest in copartnership property attaches only to the surplus, after all the copartnership debts are paid. Menagh v. Whitwell, 52 N. Y. 153. Rapallo, J., says, (Id., p. 154:) "Assuming, however, that the mortgage was intended to pass the undivided interest of the mortgaging partners, * * * it is clear that the remaining partner was entitled to control the firm property so long as he retained his interest, and apply it to the firm debts, and that the mortgagee acquired only a right to the surplus, if any, which would be found to belong to the mortgagor on the settlement of the assets."

The suggestion here occurs, what would have been the effect upon the interest of George W. Palmer in the copartnership if the contentions of the defendants were sound in law? George W. Palmer, it seems, under the copartnership agreement, owned two-sixths of the business and property of the copartnership, and was not a party to the deal between Frank Palmer and Owen and Charles. His interest was created when the copartnership was created. It was then definitely determined that these lands were copartnership lands, and liable as a whole to company disposition, and for use in the company business. Could Frank Palmer, through his mortgages from Owen and Charles, take out of the copartnership these lands, one-sixth of the company's property, and leave the whole interest of George W. Palmer liable for the company's debts? Obviously not. In Tarbell v. West, 86 N. Y. 286, Justice Andrews says: "It is now well settled that a purchaser from a partner of his interest in the partnership acquires no title to any share of the partnership effects, but only his share of the surplus, on accounting, and the adjustment of the partnership affairs." In the case last cited, the title to the lands was not in the company, but in a third person; but the court held that a mortgage from the person holding title would not improve the mortgage if the mortgagee had notice that these were company lands, and he would take by his mortgage a lien only on the surplus, after all the partnership debts were paid. This cannot be otherwise, on the theory that a copartnership is an entity, and deals as such with all the world. The property of the company is held "pro indivisio," by all the partners, and in trust, responsible for the debts of the partnership, and subject, after debts paid, to division; and while a partner may mortgage and sell his interest in the partnership, whether to purchase an increased interest or otherwise, or whether to a partner or a stranger, such mortgage or sale affect only the surplus after debts are paid and the equities of partners are settled. If it were otherwise, the rights of the other partners and of creditors would be always in peril, and practically under the control of a single partner. The copartners can unitedly dispose of the corpus of the partnership property for any purpose when not insolvent, and when enough is retained to satisfy creditors; but no individual partner can divest himself of his interest, or in any manner incumber it to the injury of the copartner or creditors; and this is the reason that mortgages by an individual copartner are interpreted as attaching only to the surplus after debts are paid and the equities of partners are settled. For such reason the mortgages given to Frank Palmer must be construed to attach only to the surplus after payment of the company's debts, and subject to the mortgages given by all the partners uniting in security for partnership debts.

The other reason why the contention of the defendants cannot prevail would be operative if the foregoing were insufficient. The defendant Frank Palmer was the owner of these two mortgages, and mortgagee named in them when the mortgages were executed by the company to the plaintiffs in each of these actions. He was also an owner, as one of the copartners, of an undivided interest in all the lands. He knew that the land was the property of a copartnership. He knew the property was in equity first liable for partnership debts. He knew that, after the partnership property was applied, he was individually liable for the claim of plaintiffs in each case. He, without reservation, executes these mortgages, which are here sought to be foreclosed. From these facts the inference is natural and imperative that he intended, when he joined the other copartners in the execution of these

mortgages, that they should embrace all the interest he had in the property, whatever that might be, whether as owner or mortgagee; so that, if it becomes a matter of interpretation or construction founded in intention, he must be concluded by the findings which the court is impelled to make upon this point. The philosophic reasoner may urge that because of the change in the common-law rule which declared the title in the realty vested in the mortgagee, to the present holding of the courts that the title remains in the mortgagor, therefore the mortgagee takes no interest in realty which he can affect by subsequently joining in a mortgage upon the same property. But the reasoning is specious, and rather a play upon terms and words than a sensible dealing with the substance. The mortgagee takes some substantial interest in the realty covered by his mortgage. The words used are apt and sufficient for a grant of the fee. A seal is necessary to a valid mortgage of real estate, because some interest in the real estate is taken through the mortgage. The law applicable to the recording of deeds and conveyances of any real-estate interest is held to be applicable to mortgages. That such an instrument, intended to convey some interest in realty as security, is held not to convey the title, but only the right to reach the title in case of default, is no warrant for holding that such an interest is not a substantial interest in the realty. The mortgage given to secure a note or any other promise to pay is not different from one given without any promise to pay by the mortgagor; but, when a mortgage is given without a promise to pay, all the mortgagee can do is to resort to the land in case of default. Ruger, J., in Spencer v. Spencer, 95 N. Y. 353, says: "The mortgagee should look to the premises mortgaged." Surely, some interest must have been vested in the mortgagee through his mortgage in such a case; some substantial interest in the realty, though he may be forced to take steps to make such interest ripen into a fee. Why, then, is not such an interest mortgagable in equity? Any interest whatever in realty may be in equity mortgaged. Whether such interest be a contract interest, an interest in remainder, an interest in equity, where the title is actually vested in another, (Tarbell v. West, 86 N. Y. 280,) or any other conceivable interest, legal or equitable, it may, as well as the fee itself, be the subject of a mortgage; and, when the mortgage contains language found in the two mortgages herein sought to be foreclosed, to wit, "have granted, bargained, sold, conveyed, and by these presents do grant, bargain, sell, and convey, [description of land,] and all the estate, title, and interest of said parties of the first part therein," it would be absurd to say that the mortgagors meant to limit the subject-matter mortgaged to the fee simple. The mortgagor says he meant to mortgage, not the fee only, but "all the estate, title, and interest" which he possessed. He could hardly have employed language which would embrace more clearly every equitable interest which he owned.

In the mortgage to the plaintiff the First National Bank of Champlain, in addition to the language above quoted, is found this language, describing the lands, etc., mortgaged: "All that portion of lot 110 [the land covered also by defendants' two mortgages] * * * which was purchased by G. W. Palmer & Co., and is now owned by said G. W. Palmer & Co., or by any of the members of said company, which company is composed of the male persons named as parties of the first part herein;" such persons being the same named also in the findings of the court herein as forming such company. Here, also, is an express declaration at the time the mortgage was given, and $2,000 in money—a new loan—was obtained by the company, that such lands were company lands, and purchased by that company presumably, as the evidence in the case discloses, at the date of formation of the copartnership, in June, 1879. There is no evidence of any purchase since. While this view is supported by every reason, and appears to be the only aspect in which the subject is capable of being viewed without wholly overlooking general principles universally recognized, we are not left entirely without judicial declaration for our guidance. That a mortgagor who is also part owner of the fee, and also owner of an interest in same lands, as mortgagee, does, when he executes his mortgage, presumably include in such mortgage (unless an intent is apparent to exclude such interest) all his interest, legal and equitable,

including his interest as mortgagee, is fully supported by Chancellor Walworth in Williams v. Thorn, 11 Paige, 465. He says: "In other words, a mortgagor of premises who himself held a mortgage thereon at the time he mortgaged his interest in the premises to another cannot set up such prior mortgage, or any interest he has acquired under the same, against his own mortgage, or against any person claiming under it; and a purchaser under a foreclosure of the mortgage given by Strong will take the premises discharged of any incumbrance thereon which Strong, either as mortgagee or otherwise, held at the time he mortgaged such premises." No different adjudication has been made since this decision on the subject. It is true, cases may be found in which the court has relieved a wife from the effects of this legal principle, holding that, she having no interest in the land, except an inchoate right of dower, and no interest in the object of the mortgage itself, her intention was manifestly only to subject her inchoate right of dower. In Gillig v. Maass, 28 N. Y. 210, Wright, J., says: "Of course, a mortgagor of premises, who himself holds a mortgage thereon at the time he mortgages his interest in the premises to another, cannot set up such prior mortgage, or any interest he has acquired under the same, against his own mortgage, or any person claiming under him." I find no authority equal to this which seeks to at all qualify this plain declaration of a principle,—a principle which ought to commend itself to any judicial mind by reason of its sheer common sense.

I have no comment upon the claim of defendants that the collateral interest which the Merchants' National Bank of Plattsburgh had, in the two mortgages now owned by defendants at the time of the execution by the mortgagee, Frank Palmer, of the two mortgages here sought to be foreclosed, prevented such mortgages from being affected thereby. I see no force in the claim, since the claim, if of any value, could only be made by such bank. As the bank has been satisfied, and the collateral released to Frank Palmer himself, the claim ceased to exist, if any there ever was, the moment of such release by the bank; and that moment the claim of these plaintiffs extended over and absorbed all the interest the bank possessed, and any subsequent transfer by Palmer must be held subject to plaintiffs' superior liens. The bank, holding the mortgages as collateral, could not assign the mortgages to Theodora Palmer, or any other person, so as to convey any title thereto. The bank could only release, or else it must only transfer, the notes for which the mortgages were held as collateral security, in order to convey the slender interest it held in the mortgages.

For the reasons stated, the defendants cannot, in this action, set up either of their said mortgages against the mortgages of plaintiffs.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

C. McLean, (Henry E. Barnard, of counsel,) for appellants.
D. F. Dobie, for respondents.

PER CURIAM.   Affirmed, on the opinion of court below.

---

(70 Hun, 598; mem. report without opinion.)
MONSON v. NEW YORK SECURITY & TRUST CO. et al.

(Supreme Court, General Term, First Department.   June 30, 1893.)

CONSTRUCTION OF WILL—PECUNIARY LEGACY.
   Testator gave the residue of his estate to his executors in trust, with power to sell, and reinvest the proceeds, but expressed a preference "that investments made by me in my lifetime should be continued so long as the same, in the judgment of my executors, can be done without loss or detriment to my estate." The will further provided that after the death of testator's widow the executors should allot such residue, and "the