Tappan's ex'r *v.* Ricamio et al.

16    89
49    504

AUGUSTUS W. CUTLER, executor of Abraham Tappan, deceased, *vs.* JOHN A. RICAMIO, LOTT PRUDDEN and others.

1. Where a mortgage is given to secure a trust fund belonging to the mortgagor, as between himself and the holder of a second mortgage given by him, he can have no claim in equity to the fund, until the second mortgage is satisfied.

2. It is within the power of a court of equity to protect the interests of legatees in remainder, during the life of the tenant for life; and the power will be exercised, not only in behalf of the legatee, but also of his assignee, or of any other person legally entitled to the fund, upon the determination of the estate for life.

3. If a trust fund is in danger of being diverted to the injury of any claimant having a present or future fixed title thereto, the administration of the fund will be duly secured by the court, in such manner as the court may in its discretion, under all the circumstances, deem best fitted to the end.

---

Samuel Guerin, by will, gave $600 to his executor, the interest and profits thereof to be paid to his daughter, Eunice Brown, during her life, and at her death the principal to be paid to her four children. Abraham Tappan, the executor of Guerin, paid the principal to the children, with which they purchased of Prudden a house and lot for $850. They agreed to pay $600 in cash, giving their bond and mortgage to Tappan for $625, as security for the fund, and gave Prudden a second mortgage for $250. The property was purchased to make a home for Mrs. Brown. She accepted it in lieu of the annuity. Tappan died in 1859, and appointed A. W. Cutler his executor.

The bill was filed by Cutler to foreclose the mortgage. Prudden filed a cross bill, praying that the original bill be dismissed, or that the premises be sold to pay encumbrances in order of priority. Prudden alone answered original bill. The executor alone answered cross bill. A decree *pro confesso* was taken as to the other defendants.

*Cutler,* pro se.

H *

*Pitney*, for Prudden, one of the defendants.

The original bill should be dismissed, or proceedings stayed until further order of court.

The mortgage which the complainant seeks to foreclose was given to the trustee of the mortgagors. Trustee is under the control of the court.

The effect of the proceeding is to injure Prudden. He should be decreed to have a lien on the fund in the hands of the executor.

THE CHANCELLOR. There is no controversy as to the order of priority of the mortgages, nor as to the material facts upon which the rights of the respective parties depend.

As between the executor of Tappan and Prudden, it is not denied that the complainant's mortgage is entitled to priority. But it appears by the cross bill, which is taken as confessed, that the fund which that mortgage was given to secure, belongs to the estate of Samuel Guerin, deceased, of which Abraham Tappan was executor. That by the will of said Guerin, the interest and profits of the fund were bequeathed to his daughter, Eunice Brown, for her life, and on her death, equally to her four children, share and share alike. The children took a vested interest in the legacy on the death of the testator.

In November, 1856, Eunice Brown and her four children, the legatees under the will of Samuel Guerin, being desirous of vesting the legacy thus bequeathed to them in the purchase of a house and lot owned by Prudden, as a home for the mother during her life, purchased the mortgaged premises of Prudden for $850. The title was made to the children. Six hundred and twenty-five dollars, the amount of the fund in question, was furnished by the executor, and for that amount the children gave a mortgage to the executor of Guerin to secure the interest of their mother in the fund. Two hundred and twenty-five dollars, the balance of the purchase money, was secured by a mortgage on the premises from the children to Prudden. The whole purchase money was thus secured on the premises; Prudden's mortgage being

last in order. His security was found in the fact that the prior mortgage, although upon its face an absolute mortgage in the ordinary form to secure the sum of $625 to the executor, yet in truth was merely intended to secure the rights of the legatee for life. On her death, the principal of the fund belonged to the mortgagors. As between them and Prudden, of whom they purchased, they can have no claim in equity to the fund, until the mortgage given by them to secure the purchase money of the mortgaged premises is satisfied.

If the mother were now dead, the fund would belong absolutely to the mortgagors, who are the legatees in remainder. If the purpose of the mortgage had been expressed upon its face, or if it had been given in terms to secure the annual interest of the fund to the widow for her life, and on her death to pay the principal to the mortgagors, the right and equity of the second mortgagee would be apparent. Independent of the legal rights of the executor, such is the real design and effect of the mortgage. He is a mere trustee to carry into effect the provisions of the will. It is clear that the mortgagors can have no title to this fund as against Prudden, their mortgagee. A mortgagor of premises, who himself held a mortgage thereon at the time he mortgaged his interest in the premises to another, cannot set up such prior mortgage, or any interest he has acquired under the same, against his own mortgagee, or any person claiming under him. *Williams* v. *Thorn*, 11 *Paige* 464.

There is no doubt of the power and duty of a court of equity to protect the interests of legatees in remainder during the life of the tenant for life. The cases cited by the complainant's counsel fully sustain the principle, and designate the mode in which the power will be exercised. *Johnson* v. *Mills*, 1 *Vesey, sen.*, 282 ; *Hallet* v. *Thompson*, 5 *Paige* 583 ; *Craig* v. *Hone*, 2 *Edwards' Ch. R.* 554 ; 1 *Story's Eq.*, § 603 ; 2 *Ibid.*, § 826–7, 845–6, 851.

And the power will be exercised, not only for the protection of the legatee, but of his assignee, or any person legally entitled to the fund, upon the determination of the estate for

life. In *Johnson* v. *Mills*, 1 *Vesey, sen.*, 282, Lord Chancellor Hardwicke said : " I thought nothing was better settled than that, wherever a demand was made out of assets certainly due, but payable at a future time, the person entitled thereto might come against the executor to have it secured for his benefit and set apart in the meantime, that he might not be obliged to pursue these assets through several hands. Nor is there any more useful part of the jurisdiction of the court in the administration of assets. Therefore it is admitted to be done in the case of a legacy always, although contingent and payable at a future day, so as that it might fall into the bulk of the estate; and this is done to secure every party of course as a common equity, without expecting any suggestion of the insolvency of the executor, or of wasting the assets."

If property in the hands of a trustee for certain specific uses or trusts (either express or implied), is in danger of being diverted to the injury of any claimant having a present or future fixed title thereto, the administration of the fund will be duly secured by the court in such manner as the court may, in its discretion under all the circumstances, deem best fitted to the end; as by the appointment of a receiver, or by payment of the fund, if pecuniary, into court, or by requiring security for its due preservation and appropriation. 2 *Story's Eq.*, § 826, 827.

If the tenant for life were now dead, the proper decree would be, after satisfying any claim that the executor might have upon the fund for administering the same, to pay out of the proceeds of the sale of the mortgaged premises, first, the claim of Prudden, and the balance, if any, to the mortgagors. During her life, it is necessary that the principal of the fund should be secured in such manner as to enable the executor to execute the trust by paying her the interest as it accrues. This may be done, either, 1st, by directing a sale of the premises, subject to the annuity of the legatee for life; or, 2nd, by directing the proceeds of the sale to be applied to satisfy the mortgages in the order of their priority,

and retaining the fund belonging to the estate of Guerin under the control of the court, to be applied in satisfaction of the equitable claims of the respective parties. The first form of decree will occasion less expense and hazard to the parties, and will probably be most free from objection. A reference will be necessary to ascertain the amount due upon the respective mortgages. Upon the coming in of the report, a decree will be made in such form as counsel may settle as most advantageous, under the circumstances, for the parties interested.

Whatever form of decree may be adopted, the rights of the legatee for life must be adequately secured. She is before the court, and it is the duty of the court to see that her interests, so far as they may be incidentally affected, should be carefully guarded.