On application of Newark Savings Institution for direction, &c.

---

In the matter of the application of the NEWARK SAVINGS INSTITUTION for direction in the management of its trusts.

1. An incorporated savings institution merely for investment of money and payment of income, is a general or public trustee, an incorporated agency for receiving and loaning money on account of those to whom the money belongs.

2. It is a mere trustee, and, as such, is subject to the jurisdiction of this court over trusts.

3. Equity will interfere if there appears to be occasion for so doing, to prevent the unequal distribution of the assets of such institution, e. g. to prohibit the payment of any depositors in full so long as it is uncertain whether there will be assets enough to pay the others in full also.

---

On petition.

Mr. A. Q. Keasbey and Mr. Cortlandt Parker, for the petitioner.

On application of Newark Savings Institution for direction, &c.

THE ' CHANCELLOR.

Application is made by the Newark Savings Institution for judicial intervention and direction in the management of its trusts. The state of circumstances presented by the petition as the occasion for invoking the aid of this court is therein wholly attributed to the very great depreciation of property which has occurred within the last few years, and which is an unavoidable concomitant of the commercial depression which the country has suffered, and under which it is still laboring. In these days, as is well known, mortgage investments originally carefully and judiciously made, on property generally and properly regarded as furnishing ample security, in very many instances, from the cause just referred to, not only prove unproductive of income, but fail to secure the repayment of the principal itself, so that on foreclosure the lender is compelled to purchase the property to save the original investment. Other securities justly accepted as the most stable (to say nothing of those which, though of a lower grade, were nevertheless considered safe,) have fallen in value.

Such a condition of affairs cannot fail to produce embarrassment in the administration of extensive trusts for investment. Under such embarrassment the petitioner seeks the assistance of this court. It alleges that it is the owner of assets (including certain depreciated securities) to the amount of about $12,000,000, besides a large sum (hundreds of thousands of dollars) of accrued interest on its investments other than the depreciated securities, and that its total deposits amount to about $11,000,000 ; that these assets consist of mortgages and public and railroad bonds, and that it has now in its possession government securities amounting, with the premium thereon, to more than $2,000,000, and also a very large amount of other securities immediately available, and that the rest cannot be realized upon at once, and cannot be converted into cash without loss if the collection be forced or the securities be put into the market.

The institution is the oldest of the savings banks in the city of Newark; its managers have been from the beginning some of the very best citizens; and, during the thirty years of its existence, it has had the full confidence of the public, as is evidenced by the amount of its deposits and the number of its depositors. These latter are 25,000, very many of whom are poor people, whose entire savings have been placed there for safe keeping. Induced by rumors of the embarrassment of the institution, depositors of large amounts are withdrawing their deposits. To pay them it is necessary to convert available assets into cash. Obviously in a very short time the institution must succumb under this process of depletion; .and then the least available assets will be all that will be left for the unpaid depositors.

The unfairness of such a result is manifest. The institution is a general or public trustee. It holds the money of its depositors in trust for investment. Its charter, by its fourth section, (P. L. 1847, p. 105,) provides that the corporation may receive as deposits, all sums of money which may be offered for the purpose of being invested, in such sums and at such times and on such terms as the by-laws shall prescribe, which shall be invested accordingly, and shall be repaid to such depositors at such times, and with such interest, and under such regulations as the board of managers shall from time to time prescribe, and the corporation may accept and execute all such trusts of every description as may be committed to it by any person, by will or otherwise, or be transferred to it by order of any court. By the fifth section it is provided that it shall be the duty of the managers to regulate the rate of interest to be allowed to the depositors so that they shall receive a ratable proportion, as near as may be, of the profits, after deducting therefrom all necessary expenses, and a reasonable surplus or contingent fund.

This court has jurisdiction over all trusts, as well where the trust is held by a corporation as where the trustee is an individual. A savings institution, such as the petitioner, is a mere trustee. *Coite* v. *Society for Savings*, 32 *Conn.* 173;

*Bunnell* v. *Collinsville Savings Society*, 38 *Conn.* 203. It has no stock. It receives the money of depositors for investment, and invests it on securities taken for the general benefit of the depositors. It is merely a large incorporated agency for receiving and loaning money on account of those to whom the money belongs. (*Coite* v. *Society for Savings.*) The interest received upon the investments is to be ratably divided among the depositors. It is so expressly provided by the charter of the petitioner. The depositors (in the absence of fraud on the part of the managers from which personal liability would arise) have no recourse whatever for repayment of their principal or interest to anything except the general investments of the institution.

The institution now before me was incorporated for the sole purpose of receiving and investing deposits. The design of the legislature in granting the charter, was to promote industry and frugality, and preserve and husband the fruits of honest toil. It contemplated no benefit to the managers, but looked only to the security and advantage of the depositors. The trust thus created is a general or public trust. No depositor has, under the charter or in equity, any right to any particular security in the hands of the institution for his deposit more than any other depositor. All the assets, after deducting necessary expenses, are held as a common fund for the security of all the depositors.

It follows that no depositor has any reason for complaint if he is not permitted to receive his deposit in full if there be even any uncertainty as to whether there will be assets enough to pay all the others in full. It follows, also, that the institution ought not, under such circumstances, to be permitted to exhaust such of its securities as are immediately convertible into cash without loss in the payment in full of clamorous or alert depositors, and leave for those who are less vigilant, or who may be less informed of the situation, the securities which are less available, and on which such loss may be sustained as that the latter may fail to realize the full amount due them. In other words, the

vigilant depositors ought not to be permitted to devolve all the losses of the trust on the others who are as much entitled to payment in full as they are.

To insure justice to the helpless is one of the most valuable prerogatives of this court. Equality in the present case is equity. I have no doubt as to the jurisdiction of this court over the subject, and I have no hesitation whatever in exercising it. Under the circumstances, I deem it my duty to see to it that the assets of this trust, in the hands of the institution, are not inequitably administered. I shall, therefore, control the management in this respect. Those of the assets which are immediately convertible into cash without loss amount, as before stated, to $2,000,000. The managers will be required to pay to all depositors who shall apply for it, eighteen per cent. of their deposits, with two per cent. interest or dividend on their deposits—the former payable on demand, and the latter·on the first day of January next —and will be restrained by injunction from paying any more than that percentage and interest to any one until the further order of this court. This will enable every depositor who desires it to receive eighteen per cent. of his deposit at once, and will protect all, and prevent any unfair advantage of one over another. It is and will be held to be equivalent to a declaration of a dividend of that amount on all deposits now held by the institution. Those who shall not now receive it will be entitled to receive it hereafter in any event, and it will be secured to them by the power of this court.

I will, also, direct that the managers shall, until further order of this court, keep separate from the deposits hitherto received all deposits which they may hereafter receive, and that they safely and securely invest such new deposits separately in the bonds of the United States, or of this state, or of the city of Newark, and in such manner that the investments may be identified, in order that they may not be liable to be subjected to the payment of or affected by any loss which may be sustained on investments taken

by the institution in the past administration of its trusts. This court will protect such new depositors from any such liability.

In order that the exact condition of the institution may be satisfactorily ascertained, an examination of its assets and liabilities will be made forthwith by competent persons to be appointed by me.

The course now taken in regard to this institution is not without precedent in this court. In the case of the *Hoboken Bank for Savings* (1874), like measures were taken by me, under similar circumstances, with salutary effect and most beneficial results to the depositors. The charter, indeed, expressly authorized intervention by this court in the management, on the petition of depositors; but, under the circumstances, I would have taken the action, under the the power of this court over trusts, if the authority had not been found in the charter.