THE FIDELITY INSURANCE, TRUST AND SAFE DEPOSIT COMPANY OF THE CITY OF PHILADELPHIA,

*v.*

THE UNITED NEW JERSEY RAILROAD AND CANAL COMPANY et al.

Provision for the payment of bonds secured by a mortgage on defendants' railroad was made by agreement that the defendants should deposit a fixed amount of money annually, as a sinking fund, with the complainant as trustee, and the bonds themselves prescribed that the sinking fund should be invested in certain other specified bonds of the defendants.—*Held,* that the court would not, in the absence of the bondholders, direct the trustee to invest the sinking fund

in other bonds of the defendants than those specified as secured by the same mortgage, but bearing a lower rate of interest, merely because the bonds required by the terms of the trust could only be purchased at a premium.

Bill for directions to trustee. On final hearing on bill and answers.

*Mr. B. Gummere,* for complainants.

*Mr. J. D. Bedle,* for United Companies.

*Mr. E. T. Green,* for Pennsylvania R. R. Co.

THE CHANCELLOR.

The bill is filed by a trustee for directions as to investing certain funds in its hands as sinking funds for certain bonds issued by the United New Jersey Railroad and Canal Company. Those bonds are of three issues, one dated March 1st, 1869, of one thousand eight hundred and forty-six bonds for £200 each, amounting to £369,200, with interest at six per cent. per annum ; another dated April 25th, 1871, of one thousand eight hundred bonds, for $1,000 each, amounting to $1,800,000, with like interest; and the other dated May 1st, 1871, of two thousand bonds, for $1,000 each, with like interest. All the bonds are payable in 1894. As security, the company agreed with the

---

NOTE.—Courts of equity possess the power to change the investments or character of property of beneficiaries, and may direct trustees and guardians to do so, *Snowhill* v. *Snowhill, 2 Gr. Ch. 20,* [see *3 C. E. Gr. 350*]; *Ware* v. *Ware, 2 Hal. Ch. 117; Calmes's Case, 1 Hill Ch. 112; Webb* v. *Shaftsbury, 6 Madd. 100; Robinson* v. *Robinson, L. R. (10 Irish Eq.) 189; Dodge* v. *Cole, 97 Ill. 338; Hager* v. *Hager, 3 Desauss. 18; Williams* v. *Harrington, 11 Ired. 616;* but see *Berry* v. *Rogers, 2 B. Mon. 308; Baker* v. *Lorillard, 4 N. Y. 257; Faulkner* v. *Davis, 18 Gratt. 651; Williams's Case, 3 Bland 186; Rogers* v. *Dill, 6 Hill 415.*

The courts regard the interest of the immediate beneficiary rather than contingent or remote interests, *Salisbury's Case, 3 Johns. Ch. 347; Steele's Case, 4 C. E. Gr. 120; Heaton's Case, 6 C. E. Gr. 221;* and will not convert or transfer or change secure investments unless obviously advantageous, *Sadler* v. *Turner, 8 Ves. 617; Douglass* v. *Caldwell, 6 Jones Eq. 20; Barry* v. *Marriott, 12 Jur. 1043, 2 De G. & Sm. 491; Howe* v. *Dartmouth, 7 Ves. 137; Boyce's Case, L. R. (1 Irish Eq.) 45, (2 Irish Eq.) 255; Davis's Case, 14 Allen 24;*

Fidelity Co. *v.* United Cos.

bondholders of each issue, at the time of issuing the bonds, that it would provide a sinking fund for their redemption at maturity, by the payment, annually, of a specified sum of money to the complainant in trust; the money so paid, to be held and invested by it and the interest compounded. This agreement was incorporated in the bonds. The agreements for the two issues first mentioned (the loan of 1869 and that of 1871, for $1,800,000) provide that the investments shall be made in the loan or any loan of the United Companies or either of them theretofore issued or in lawful securities; and the agreement for the other, provides that the investments be made in that loan or any loan of those companies or either of them, or in lawful securities. The bill states that the complainant will receive on the 1st day of February, 1883, from six per cent. bonds then payable, in which it has invested the sinking funds, $396,900; and will have in hand on or before the 1st of April, 1883, $147,370 more from payments on account of the sinking funds and interest on investments, altogether, $544,270; that it is now, and has been for some time past, impossible to purchase any of the bonds of the United Companies maturing in 1894, without paying a premium of at least twelve per cent. therefor; and that it would be impossible to purchase any large amount of those bonds without thereby greatly increasing the market price; that it is impossible to purchase six per cent.

*Jewett's Case, 16 Ala. 409; Talley* v. *Starke, 6 Gratt. 339;* see *Gary* v. *Cannon, 3 Ired. Eq. 64.*

Especially will the court hesitate in directing a change of investments when the instrument creating the trust confers no such power on the trustees, *Murray* v. *Feinour, 2 Md. Ch. 418.*

What alterations in the condition of the estate or investments, or in the situation of the parties, will justify the intervention of the court as to changing prescribed investments, *Boss* v. *Godsall, 1 Y. & C. Ch. 617; Wedderburn's Trusts, L. R. (9 Ch. Div.) 112; Perronneau* v. *Perronneau, 1 Desauss. 521; Crawford* v. *Creswell, 55 Ala. 497;* see *Wilkinson's Estate, L. R. (9 Eq.) 343.*

Where the consent of a person named in the trust-deed is a prerequisite to a change of the investment of the trust fund, the court will not remove him for refusing to consent thereto, *Vanderbilt's Case, 20 Hun 520;* see, also, *Lee* v. *Young, 2·Y. & C. Ch. 532; Beauclerk* v. *Ashburnham, 8 Beav. 322; Plympton* v. *Plympton, 6 Allen 178.*—REP.

government securities or any other securites of the class known as legal securities, without paying such a premium as to reduce the average interest secured thereby, to at most four per cent ; that the United New Jersey Railroad and Canal Company, in order to take up the maturing bonds before mentioned, propose to issue on the 1st day of February, 1883, bonds to the amount of $1,824,000, bearing interest at the rate of four per cent. per annum, and maturing forty years from date, and to be secured by the lien of a mortgage given by the United Companies to the complainants dated April 20th, 1871, which bonds can be purchased now at the rate of ninety-three and a-half cents on the dollar ; and that in the present condition of the money market, such investment of the $544,270, is the most advantageous that can be made, and that in the future it may also be more advantageous to invest in other bonds now or hereafter to be issued secured by that mortgage. The bill prays that this court will grant authority and permission to make such investment of such present and future moneys.

The payment of all the bonds of the three issues before mentioned of 1869 and 1871, respectively, is secured by the mortgage of 1871. In the bonds of the issue of 1871, the fact that they are so secured is stated. The mortgage is made to secure indebtedness created and which may be created to an amount not to exceed $20,000,000. When the provision for a sinking fund was made for the issues of 1871, the fact that those bonds were secured by that mortgage was in contemplation of the parties, and yet, as to one of the issues, the provision was made that the investments for the sinking fund therefor, should be made in bonds either of that loan or any *previous* one.

It is the rule that the directions for investment contained in an instrument of trust are imperatively obligatory on the trustee ; but by the direction of a competent court, he may depart from them. The court, however, should exercise its authority in such cases only in view of the existence of a necessity. The power of this court to abrogate or annul any of the terms of the before-mentioned agreements, should not be exercised except for clear and cogent reasons, and with full opportunity to the parties who

are to be affected by such action to be heard. The bondholders are entitled to the advantage of the agreements as made on the issuing of the bonds, and it is not proper for this court to substitute its own judgment for their business arrangements, unless it clearly appears to be necessary. To warrant such interference in so delicate and important a matter, it must appear indisputably that an occasion has arisen which calls for its action. It may, indeed, be for the advantage of the bondholders that the trustee be empowered to disregard the directions of the instrument of trust, in reference to the issue of 1869 and one of those of 1871, and invest in bonds not of the same issue as those the payment of which the sinking fund is designed to provide for, or in those of prior issues, but in bonds of subsequent issues. But to give such authority would manifestly nullify a part of the agreements on the faith of which those bonds were purchased and are held. The holders of the bonds have every reason to expect that this court, not only will not nullify those agreements, except in view of the existence of a necessity for doing so, but will uphold them. The law, as before stated, holds trustees to a strict observance of the directions for their guidance contained in the instrument of trust, and the cases recognize the sacredness of the right of the creditor of the trust to give such directions on the subject of investments as to him shall seem best, and the reluctance of the court to authorize a departure therefrom. In *Wood* v. *Wood, 5 Paige 596,* Chancellor Walworth said that where the testator has directed the trust fund to be invested in the purchase of land in a particular place, and required the trustee to apply the rents and profits for the use of the *cestui que trust* during his life, or for any shorter period, this court may, with the assent of all persons who have either vested or contingent interests in the fund or in the lands to be purchased therewith, authorize the trustee to invest the fund in lands or other real estate in another place, upon the same trusts. And if any of the persons who are thus interested are infants, and within the jurisdiction of the court, the chancellor may assent to such a change of investment in their behalf. In *Burrill* v. *Sheil, 2 Barb. S. C. 457,* where a testator, by his

will, directed that investments be made in England, it was held that the court had no power to divert the investment from that country, and to direct it to be made here, except with the assent of all the persons interested therein, and therefore, inasmuch as some of them were infants, and not within the jurisdiction, the order was denied. Mr. Perry, in his work on Trusts, lays it down as a rule, that if an investment in a particular fund or stock is directed by a testator, it cannot be varied except by the consent of all the parties interested ; and if there are parties not *sui juris*, or not in being, the court itself will not order a change. *Perry on Trusts*, § *466*. In the case before me, the trustee is complainant, and the defendants are the obligor and its guarantor. The bondholders, except as they may be said to be represented by the trustee, are not represented at all. It is highly probable that it is impossible to bring them before the court except by representation, but that fact would only tend to make the court still more careful and still more reluctant to destroy any part of the agreement on which they may rest. It appears from the bill that the results of investment in the securities designated in those bonds which provide for investment in the bonds of the same issue or of prior issues, will be practically the same, or nearly so, as the investment in the four per cent. bonds of the issue about to be made. Conceding that it will be less productive, that fact is not enough to induce this court to assume the responsibility of saying, for absent bondholders, that it is their interest to annul a provision carefully made, and which they, perhaps, value as an important element of security. Nor can the bondholders be regarded as being represented by the trustee for the purposes of this application. The trustee recommends the change, but the bondholders might not concur. It is enough to say that I do not perceive, in the facts submitted, the existence of such a condition of circumstances as to warrant me in assuming the responsibility of giving the desired direction, and thus disturbing the contract made by the parties for securing the payment of the bonds; and that such action should not be taken, except in case of necessity, in the absence of the bondholders.