In the matter of the probate of the alleged will of SAMUEL M. BRAUNSTEIN, deceased.

[Argued October 20th, 1932.   Decided January 31st, 1933.]

*Mr. Harry R. Coulomb,* for the appellants.

*Mr. Emerson Richards* and *Mr. Robert H. McCarter,* for the respondents.

The opinion of the court was delivered by

PARKER, J.

This is an appeal of Nathaniel S. Hyman and five others from an order advised by Vice-Ordinary Ingersoll in the prerogative court affirming an order in the Atlantic orphans court which approves a compromise and settlement made by the two administrators *pendente lite* of the Braunstein estate, and also by the executors named in the will, which will has not as yet been admitted to probate.

Braunstein died in 1928. He left a widow, who had been his third wife, and with whom he was evidently on bad terms, because the will, which is quite elaborate, cuts her off entirely from any share of his estate and does not even mention her. He also left a granddaughter, the daughter of a son by a former marriage. This granddaughter would be entitled to a large part, if not the whole, of the estate in case of intestacy.

She was cut off with $5,000 payable in two payments of $2,500 each. A large amount of money was left to various Jewish charities and the residuary estate was divided into two equal parts, one of which was to go to Braunstein's two brothers, Harry and Philip, and his sister, Anna' Lowenburg; and the other equal part to his nephews and nieces in equal shares.

Braunstein had cast off his wife and she had brought a suit against him for maintenance or specific performance of an agreement for support, wherein she had a decree, which was taken to this court on appeal. Negotiations had been in progress between her and her husband through counsel and had reached an oral arrangement for final settlement, the general purport of which was that she was to have $10,000 a year for life. This, according to the briefs, had all been arranged and final decree had been prepared by consent and was ready to be presented when Braunstein suddenly died. This threw out the whole settlement of the chancery suit, any right to maintenance lapsed, as the vice-chancellor held, and the whole affair became a question of getting some sort of a settlement out of Braunstein's estate. The widow filed a caveat, and so did the granddaughter Doris, through her guardian. The will was thus in litigation and it was a question whether it would be sustained. In any event, however, the estate had to be put in order and creditors advertised for, debts paid, &c., and so the orphans court appointed as administrators *pendente lite* the Guarantee Trust Company of Atlantic City, which is named as one of the executors of the will, and the Honorable Emerson Richards of Atlantic City. The litigation dragged on for some two years or more, and in 1931, probably for the purposes of this case, an act was passed by the legislature empowering executors and administrators not merely to settle claims against the estate, past or future, of any claimant including caveators, widow, or minor, but to go to the orphans court in advance and lay proposed settlements before that court and have them approved, of course, on notice to parties interested. This act appears on page 222 of the statutes of 1931. However, there was obviously some uncertainty as to whether it applied to administrators

*pendente lite* and by chapter 413 (*P. L. 1931 p.* 1486, found at the beginning of the 1932 volume), the act was so amended as specifically to include them.

Armed with this legislation, the administrators *pendente lite* agreed tentatively on a compromise with both the widow and the grandchild, an abstract of which we take from the brief of the appellants. It provides:

"1. For the withdrawal of the caveats, and the admission of the will to probate without contest;

"2. For the withdrawal of the appeal in the chancery suit;

"3. For the payment by the executors and trustees to Bertha Hastings Braunstein, the widow, of the sum of $4,800 a year during her life, payable in monthly installments of $400 beginning September 1st, 1929;

"4. For the payment to the granddaughter Doris Adele Braunstein, of the sum of $2,500 a year during her life, payable in monthly installments of $208.33, beginning September 1st, 1929;

"5. Upon the distribution of the estate, the setting aside of a fund, which, at the rate of five per cent., would produce sufficient to make the above payments."

It will be perceived that there are two important aspects in this settlement. The first is, that if it becomes an accomplished fact, it disposes of the chancery suit of the widow. Whether there is any real basis to that suit at this time may well be doubted, and naturally there should be some sort of a substantial basis for it in order to constitute a reasonable consideration for a settlement and compromise. The other aspect, however, is the real meat of the case, viz., the withdrawal by the widow and by the grandchild of their respective caveats and the admission of the will to probate without further contest.

The general attack upon the compromise is, first, that it is not such a compromise as could be upheld at common law, and secondly, that if it be rested upon the statute, that statute is unconstitutional (a) because the act is entitled merely as a supplement to the Orphans Court act and does not express the real object of the statute, which is to permit the settle-

ment of disputed claims. We see little, if any, merit in this point, but it need not be decided as the appeal turns on other grounds.

(b) The other constitutional point invokes the fourteenth amendment to the constitution of the United States and we consider it well taken. Regarding the common law powers of the *administrators pendente lite:* both sides quote *Benson* v. *Wolf, 43 N. J. Law 78,* a leading case in this state. The opinion states the limitation of those powers thus: "He not only holds the property until the suit terminates, but he may maintain actions for recovering debts due the deceased, collect his effects, and even obtain the possession of a leasehold estate by ejectment; but his power does not extend either to vest or distribute the proceeds. As incident to his office, he may sue and be sued, collect and pay debts, but he cannot pay legacies or make distribution of the estate, for the rights of the parties claiming the fund and its distribution are in litigation, and he may not anticipate the result. When these rights are established, his functions cease and he must pay over all he has in hand in his character as administrator to the persons pronounced by the court to be entitled for further administration and distribution."

It seems clear therefore that an administrator *pendente lite* could not at common law deal with settlement of the question whether a will shall be admitted to probate. That settlement is for the interested beneficiaries, and heirs-at-law and next of kin. It may well be, for example, that a residuary legatee, to protect his legacy, may agree with a contestant that a stated sum be paid out of the residue that would come to such legatee in consideration of withdrawal of that contest; but we fail to see how an administrator *pendente lite* could make the payment even with consent of the residuary legatee and as a charge on the residue. That might be done by the executor with consent of the legatee, when the estate shows assets available and to which the residuary legatee is entitled; but that would be merely a payment on account of the residuary legatee and in reduction of the amount of his residue. Doubtless it is often done, but only with consent of all interested parties. So here perhaps an agreement that the executors

should carry out a settlement could be supported if all the parties interested under the will or otherwise consented, and all debts were paid; but here about one-fourth of the residuary interest protests, and certainly at common law not even the executor, let alone a temporary administrator, could draw on their residue against their will, even to compass an advantageous settlement. If the holders of the other three-fourths should wish this done and the cost charged on their three-fourths that might be another matter.

The remaining question is whether the later act of 1931 validly confers this very dangerous power on the administrators *pendente lite*.

It clearly purports so to do, and is expressly retroactive, section 1 refers to "claims arising prior to or subsequent to passage of this act, whether in suit or not," and section 2 relates to "disputes concerning the probate or construction of" a will. It contains no retroactive words.

Whether such a statute is a wise or beneficial one, is not for our determination. Whether it is valid as to cases arising after its passage, is a question not before us. As to a situation already existing, however, we are clear that it is invalid, and indeed there is very little argument for the respondents on this point. At the time of testator's death, and until the act was passed, the parties beneficiary under the will were entitled to defend against a caveator and take their chances of success. This law purports to permit the administrators at their expense and over their protest, to use the assets of the estate as they could not previously have been used. This appears to take their property away from them to that extent. To the suggestion that unless the statute be held good, a minority may override the majority there are three answers. 1. That was previously the law. 2. If the majority are willing to pay the expense, there is no objection. 3. The statute is broad enough in terms to enable a settlement without reference to the wishes of any or all interested parties. As to settling the caveats, therefore, we think the agreement invalid and the statute ineffective.

It is argued that the matter of settling the chancery suit is separable, and that the act should at least be upheld as to

that. But the element is only one of several covered in the agreement, and that agreement must stand or fall as an entirety. The gravamen of the settlement, in fact, is the withdrawal of the caveats; and we repeat that the administrators or executors cannot bargain for that withdrawal counter to the wishes of beneficiaries.

The decree under review will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, KAYS, HETFIELD, WELLS, KERNEY, JJ. 12.