Complainant Margaret Guenther Osgood Reiner is the only child of Paul Guenther, deceased, and Virginia Guenther Osgood, the other complainant, is the only child of Margaret Guenther Osgood Reiner. Olga Guenther is the widow of Paul Guenther. *Page 80 
Paul Guenther in his lifetime delivered to the Fidelity Union Trust Company, a corporation of this state, twelve thousand five hundred shares seven per cent. cumulative preferred stock of Paul Guenther, Inc., a New York corporation, to be held by it upon certain trusts set forth in a written declaration of trust bearing date December 28th, 1922. Paul Guenther died January 17th, 1932.
In paragraph "f" of the trust agreement, the donor directed the trustee to set up a trust fund, and pay the net income of the trust fund to the complainant Margaret Guenther Osgood Reiner. The principal of the trust fund he directed to be paid and distributed one-tenth to Margaret Guenther Osgood Reiner on January 2d 1934, and biannually thereafter until the principal is exhausted. In the event of the death of Margaret Guenther Osgood Reiner before she became entitled to the whole of said principal the unpaid portion thereof was to be paid or distributed to such persons as she may by her last will and testament appoint and designate to take and receive the same, and in default of the exercise of such power of appointment said unpaid portion was to be paid or distributed to and among her issue, if any, per stirpes, and in default of both, such designation and appointment and such issue, said unpaid portion was to be paid to the estate of Margaret Guenther Osgood Reiner.
The twelve thousand five hundred shares seven per cent. cumulative preferred stock of Paul Guenther, Inc., were converted into money, and the trustee came into possession of the sum of $1,250,000 in cash, representing the principal of said main trust fund.
Pursuant to the terms of paragraph "f" the trust fund has been set up by the trustee and the principal and income invested and reinvested from time to time in various interest bearing securities.
Except as set forth above in paragraph "f" of said trust agreement, Virginia Guenther Osgood is presently vested with the remainder interest and estate in the fund created, subject to the payment of the income of said main trust fund, to the complainant Margaret Guenther Osgood Reiner and to the *Page 81 
defendant Olga Guenther, during their respective lives, subject to certain deductions in the event of the exercise of the power of appointment therein provided and also subject to be divested, in whole or in part by the happening of certain contingencies therein mentioned (none of which contingencies have yet occurred) certain interests in the main trust fund pass to the defendant Bruno and Theresa Trust Fund, Geithain, Saxony, Germany, and defendants Dover Hospital of Dover, New Jersey, and Lenox Hospital of New York City.
The trust agreement also provided that "Should the above described stock, or any stock or securities issued and or held in lieu thereof, be redeemed then and in that event to invest the proceeds derived therefrom in such securities as are by the laws of the State of New Jersey designated as legal investments for trust funds."
Complainants bring this bill of complaint praying the court to authorize the trustee to invest such portion of the main trust fund and of the trust fund set up under paragraph "f" as it deems advisable not in excess of twenty per cent. of each of said funds in common stock selected from those included in a list of common stocks annexed to the bill of complaint, alleging that economic conditions now existing and which have existed for sometime past and which complainants believe will continue to exist in the future, represent such a change in conditions occurring since the making of the trust which could not have been foreseen by the creator of the trust, that the objects and purposes of the trust may be defeated, in whole or in part by the continued investment of the entire funds of the trust in the kinds or classes of securities to which the trustee believes it is limited by the trust, and alleges that the interest of all of the beneficiaries vested and contingent, will be promoted by the investment of portions of said trust fund, not exceeding twenty per cent. of each of said funds, in investments in common stocks, and other than those specified by the trust agreement.
The matter was referred by the court to a special master to hear the same and report thereon whether or not the prayers of the bill should be granted and what order or decree *Page 82 
should be made thereon, and for that purpose to take proofs and other evidence which may be submitted by the parties before said special master.
The master reported that in his judgment the prayers of the bill of complaint should be granted under the inherent jurisdiction of this court, as well as under R.S. 1937,3:16-17, and found that the objects and purposes of the trust, and the interests of all the beneficiaries thereof, whether vested or contingent, will be promoted by the investment of not more than twenty per centum in present values of the corpus of the trust in the common stocks of the corporations listed in the schedule attached to his report and made a part thereof.
The matter is now before me on exceptions filed by the trustee to the master's report. In substance the trustee excepts to the master's report upon the ground (A) that there was not sufficient evidence before the master to support his findings that the objects and purposes of the trust would be defeated by compliance with the donor's directions; (B) that the court has no inherent jurisdiction or authority to authorize investment of trust funds in "speculative stocks;" (C) that R.S. 1937, 3:16-17 "to the extent that this section seeks to add to the powers and jurisdiction of the court of chancery with regard to trusts established prior to the passage of said section, it is unconstitutional as an impairment of a contract obligation in contravention of article I, section 10 of the United States Constitution, and article IV, section VII, paragraph 3 of the New Jersey Constitution," and (D) that the court of chancery "does not have personal jurisdiction over all of the cestui quetrustent having vested and contingent interests in the trustres which would be affected thereby."
 D.
It seems to me proper to first dispose of the exception under (D).
The attack on the jurisdiction of the court is rested upon the fact that service upon the defendants Olga Guenther, Bruno and Theresa Guenther Trust Fund and Lenox Hospital (absent defendants) was made by publication. *Page 83 
The instant trust has its situs in this state and the right of the court to proceed upon constructive service and the binding force of a decree based upon such service is well established.
Vice-Chancellor Berry in Swetland v. Swetland, 105 N.J. Eq. 608
(at p. 612); 149 Atl. Rep. 50, held: "The rule of law is well settled that the courts of the testator's domicile and of the state in which the will is probated have primary jurisdiction over testamentary trusts. McCullough's Executors v.McCullough, 44 N.J. Eq. 313; Marsh v. Marsh's Executors,73 N.J. Eq. 99; Davis v. Davis, 57 N.J. Eq. 252; Murphy v.Morrisey Walker, Inc., 99 N.J. Eq. 238; Hewitt v. Green,77 N.J. Eq. 345.
"It is contended that the rule as to testamentary trusts has no application to trusts created inter vivos. The reason for the rule with respect to testamentary trusts is based upon the fact that personal property has its situs at the domicile of the owner. Mobilio sequuntur personam. And a testamentary disposition of personalty must be in accordance with the laws of testator's residence and domicile at the time the will becomeseffective. Murphy v. Morrisey Walker, supra. The same reasoning which results in that rule suggests that the validity and situs of trusts inter vivos are determined by the law of the domicile of the settlor or creator at the date of theexecution of the trust instrument. 39 Cyc. 194; Mercer v.Buchanan, 132 Fed. Rep. 501; Liberty National Bank and TrustCo. v. New England Investors, 25 Fed. Rep. 2d 493;Maynard v. Farmers' Loan and Trust Co., 203 N.Y. Supp. 83.
Either of these rules applied to the trust here under consideration would fix the situs of the trust in New Jersey and render its administration subject to New Jersey laws. * * * The general equity jurisdiction of this court over trustees and their administration applies as well to trusts inter vivos as to testamentary trusts. And if specific authority were needed for the exercise of jurisdiction to prevent further dissipation of this trust estate, it may be found in the decisions of this court (Conover v. Fisher, 36 Atl. Rep. 948; Tappan's Executor v.Ricamio et al., 16 N.J. Eq. 89) and the decisions of other jurisdictions. Chase v. Chase (Supreme Court of *Page 84 Massachusetts), 2 Allen 101. And `in suits by a beneficiary against his trustee, an injunction, if needed, will be granted as a matter of course' to restrain violations of the trust. 4 Pom.Eq. Jur. § 1687." The court of errors and appeals affirmed solely on the ground that the trust in the Swetland Case had its situs in New Jersey. 107 N.J. Eq. 504; 153 Atl. Rep. 907.
And so far as applicable to the instant matter the decision of the court of errors and appeals in Cutts v. Najdrowski,123 N.J. Eq. 481; 198 Atl. Rep. 885, does not affect what was said in Swetland v. Swetland. The court of errors and appeals in the former case, as I understand its decision, overruled what was said in Swetland v. Swetland with respect to the situs of the trust not with respect to what the court might do if thesitus of the trust was in this state, and the court of errors and appeals came back to the doctrine that (at p. 483): "The creation of an inter vivos trust in money or securities is governed by the law of the situs of the money or securities. 2Beale Conflict of Laws 1019; Hutchison v. Ross, 262 N.Y. 381;187 N.E. Rep. 65; 89 A.L.R. 1007. In that case, the court of appeals of New York, in an exhaustive opinion by Judge Lehman, held that a trust of money or securities made inter vivos, the securities being in that state, was governed by the same rules that controlled other conveyances of property in that state."
In 2 Beale Conflict of Laws 1935, 1024 § 297.2, the statement is made:
"Any question which arises after the trust has come into being is a question of the administration of the trust. Such questions relate to the trustee's duties, the investments he may make, to whom he must pay income or principal, where he must account; the assignability of the interest of the beneficiary, and the power of his creditors to reach the trust res or its income; and the right of a beneficiary to terminate the trust.
"All matters of administration are determined by the law of thesitus or seat of the trust. The situs of a trust must be determined by an interpretation of the words by which the trust is created. No rule of law can be laid down for the purpose of interpretation. As has been seen, all indications are considered, such as the intention of the parties, the place of business or domicil of the trustee, the location of the trust res, and other similar matters. The seat of the trust *Page 85 
having been determined, the law of the state in which the trust is located will apply to its administration.
"The rule is applicable to all questions as to the rights of the beneficiary under the trust: whether the settlor may revoke; who takes as beneficiary; the alienability of the beneficiary's interest, the right of creditors of the beneficiary to reach the income, the right of the beneficiary, a married woman, to receive the income free from the interference of her husband, the application of income between beneficiaries, the right of the beneficiary to put an end to the trust and receive a conveyance of the trust res. * * *"
And the statement is made in section 299.1, page 1026:
"The administration of a trust is supervised and directions given to the trustees by a court. In the nature of things only one court can so supervise. For instance, to some one court a trustee must account, must submit to direction, and may ask for instructions. This only court which may supervise a trust and give instructions to a trustee is the court at the seat of the trust. No other court can discharge a trustee, and no other court will give instructions."
If the trust has its situs in this state the right of the court to proceed upon constructive service and the binding force of a decree based upon such service is so clear as not to warrant further discussion as is the binding force of a decree of a court of general jurisdiction, as is the court of chancery, based either upon actual or constructive service, however erroneous that decree may turn out to be. 2 Perry Trusts (7th ed.) §476(a); Chapman v. Northern Trust Co., 296 Ill. 353;129 N.E. Rep. 836.
 C.
And chapter 45 of the laws of 1937 (now R.S. 1937, 3:16-17 to18) is not unconstitutional if applicable to give relief in this case.
The trust agreement was made December 28th, 1922. It provided that, if the stock of Paul Guenther, Inc. (a business corporation), which constituted the corpus of the trust, should be redeemed, the trustee had power to "invest the proceeds derived therefrom in such securities as are by the laws of the State of New Jersey designated as legal investments for trust funds." The stock which constituted the corpus of the trust *Page 86 
at the time the trust was set up was seven per cent. cumulative preferred stock and the trustee was authorized to retain it and collect dividends and make distribution of income and only in the event that the stock was redeemed was the trustee to invest.
At the time of the making of the trust agreement, December 28th, 1922, the statutes of New Jersey with respect to the investment of trust funds provided, inter alia, that "Any * * * trustee whose duty it may be to loan or invest money intrusted to him as such, may, without any special order of any court, invest the same or any part thereof in any of the following securities * * *; this act shall not apply where the deed of trust, or the last will and testament of any testator, or any court having jurisdiction of the matter specially directs in what securities the trust funds shall be invested, and every such court is hereby given power to specially direct by order or orders, from time to time, additional securities in its discretion in which trust funds may be invested and any investment thereof made in accordance with any such special direction shall be legal, and no * * * trustee shall be held liable for any loss resulting in any such case." (Arbitrary section 137) title "Orphans Courts," 3Comp. Stat. p. 3864; also see 2 Comp. Stat., title "Executors and Administrators" (arbitrary section 37), p. 2272, giving authority to trustees to invest in any loans or securities "in which savings banks of this state may now invest their funds by the provisions of any general law of this state;" see, also, section 72-37, 1 Cum. Supp. Comp. Stat. 1924 p. 1214.
These statutes were gathered together in R.S. 1937, 3:16-1.
There were amendments since 1922 which appear in R.S. 1937,3:16-1, but none which affect the situation at bar for the language "without special order of any court" and the language giving a court having jurisdiction power to specially direct "additional securities, in its discretion, in which trust funds may be invested" entered the statutes prior to 1922. And so the amendment of R.S. 1937, 3:16-1 by Pamph. L. 1938, ch. 196 p.438, does not change the situation. While the section has been almost entirely rewritten the significant language above indicated is retained. *Page 87 
To interpret the language of this trust instrument as requiring that the trust funds should be invested only in securities which were legal investments for trust funds at the time of the creation of the trust is to attribute to the creator of the trust a complete lack of ordinary intelligence. While it is true that the creator of the trust cannot be assumed to have anticipated that a situation would arise in which it would be illegal to contract for the payment of debts in gold or in currency measured by gold (on a free market not a market fixed by government fiat), it is absurd to assume that the creator of the trust did not contemplate situations would arise from time to time, which would induce the legislature to change the types of legal investments because of changes in economic conditions which would render investments safe at one time, unsafe at another time. What the creator of this trust (who undoubtedly was possessed of ordinary common sense) must have believed, was that investments which were approved by the legislature or by the courts for trust funds would be more likely to be safer investments than other investments.
It is not necessary to distort the language of the trust agreement to reach the conclusion that, when the creator of the trust used the language "such securities as are by the laws of the State of New Jersey designated as legal investments for trust funds," he meant such securities as "are, not as of the date of the creation of the trust but as of the date of the investment, by the laws of the State of New Jersey designated as legal investments for trust funds."
I fail to understand the constitutional points raised by the trustee and it cites no authority which has any application to the situation at bar. The cases which it cites have reference either to the taking away of a remedy as Vanderbilt v. BruntonPiano Co., 111 N.J. Law 596; 169 Atl. Rep. 177, and Rader v.Southeasterly Road District of Township of Union,36 N.J. Law 273, or a change in substantive rights as Fidelity Union TrustCo. v. The J.R. Shanley Estate Co., 113 N.J. Eq. 562;167 Atl. Rep. 865, and In re Braunstein, 112 N.J. Eq. 315;164 Atl. Rep. 431.
Vice-Chancellor Backes, in Fidelity Union Trust Co. v. *Page 88 The J.R. Shanley Estate Co., supra, after referring toPennington v. Metropolitan Museum of Art, 65 N.J. Eq. 11;55 Atl. Rep. 468, said (at p. 565): "The doctrine of necessity has no application to the property rights in a trust. The rights cannot be altered to prevent a disappointment which the creator might have provided against had he foreseen the mishap."
The statute does not purport to authorize the court to change substantive rights. It has reference merely to matters of administration. It authorizes (R.S. 1937, 3:16-17) the court to act only when "by reason of a change in conditions which has or shall have occurred or which may be reasonably foreseen theobjects and purposes of any trust heretofore or hereafter created by deed, will or other instrument might be defeated in whole or in part by the investment or continuance of the investment of all the funds of such trust in the kinds or classes of securities to which the trustee is or shall be limited by the statutes of this state or by the instrument or instruments creating such trust." And in such event (R.S. 1937, 3:16-18) the court may "authorize or direct the trustee of such trust to invest the whole, or such part thereof as it shall designate, in any class or classes of investments, including common or preferred stocks of corporations of this state or of any other state or country, which in its judgment will promote the objectsand purposes of the trust and the interests of all the beneficiaries thereof." (Italics mine.)
Just what effect the opinion of the court in In re Davis, 96Mass. (14 Allen) 24 (at p. 29), quoted from by the trustee in its brief, has in the instant case I cannot conceive. The court said: "It is obvious that this statute was not intended to confer on the court a discretionary power to act in entire disregard of the objects of the trust * * *. We are still to regard the objects of the trust as before." Certainly no one can successfully contend that, under R.S. 1937, 3:16-17 and 18, the court may disregard the objects of the trust; the statute directs the court to regard the objects of the trust.
We are dealing here with a matter, not of substantive rights, but of administration and no case is cited by the trustee *Page 89 
to the effect that legislation which will permit a court having general jurisdiction with respect to the administration of trusts to provide for an administration in a way other than authorized by the trust instrument is unconstitutional either as depriving a beneficiary of due process of law or as impairing the obligation of a contract or depriving a beneficiary of a remedy to enforce rights under a contract.
At the time of the creation of this trust, as heretofore stated, the legislation (3 Comp. Stat. p. 3864 § 137; Pamph. L.1907 p. 383), provided that any court having jurisdiction might specially direct in what securities the trust fund should be invested and "every such court is hereby given power to specially direct by order or orders, from time to time, additional securities in its discretion in which trust funds may be invested and any investment thereof made in accordance with any such special direction shall be legal, and no executor, administrator, guardian or trustee shall be held liable for any loss resulting in any such case." And the statute contained a list of securities in which investments could be made "without any special order of any court."
When this trust was created and when the creator used the language "in such securities as are by the laws of the State of New Jersey designated as legal investments for trust funds," the creator of the trust must be assumed to have known that the legislation at that time provided that a court having jurisdiction might designate securities for investments other than those specifically mentioned in the statute. The effect of an order of the court was to make securities designated by the order "legal."
The result is that, even if the language "are * * * legal investments" refers to the time of the creation of the trust, investments which may be designated by a court having jurisdiction are legal investments within the meaning of that clause of the trust instrument.
But it is clear to me that this language does not refer to the date of the creation of the trust but rather to the date of the investment.
The creator of the trust must also be assumed to have known that the court of chancery had inherent jurisdiction *Page 90 
under certain circumstances to change the method of administration of a trust. Where then are there constitutional rights of any person involved? It is not the privilege of the trustee to rely upon alleged constitutional rights of beneficiaries. What constitutional right of the trustee is involved? The answer, obviously, is none. The trustee is not the trustee of the rights of the beneficiaries; it is the trustee only of the property. It may be entitled to be heard upon the question as to whether the course which the beneficiaries now ask may be pursued is a course which is in accord with good business judgment, but it has no right to rely upon the alleged constitutional rights of beneficiaries.
It is fundamental that a person seeking to rely upon constitutional rights must rely upon those which he himself possesses not upon those of others and he must show that he is injured. 11 Am. Jur. tit. "Constitutional Law" 748 § 111;Aikins v. Kingsbury, 247 U.S. 484; 62 L.Ed. 1226; Red RiverValley National Bank v. Craig, 181 U.S. 548; 45 L.Ed. 994;Premier-Pabst Sales Co. v. Grosscup, 298 U.S. 226;80 L.Ed. 1155, and a legion of other cases.
 A. AND B.
The court has inherent jurisdiction to grant the relief prayed and sufficient facts are before the court to warrant the exercise of that inherent jurisdiction. The court may not act merely because the life beneficiaries desire a larger income. That element is one which should be given consideration but it is not decisive. The rights of ultimate beneficiaries in the corpus
must also be considered. The action proposed must appear to be in the interest both of the life tenants and of the ultimate beneficiaries.
The purpose of the creator of the trust to give an income to life beneficiaries must be given consideration; let it be assumed that at a certain time when savings bank deposits were paying four per cent. interest, a trust is created consisting of such bank deposits and the trustee is directed to keep the fund of the trust invested in those deposits and to pay the income for the support and maintenance of a minor *Page 91 
child and then over, and let it be supposed that the income is needed for the support and maintenance of the child and the creator of the trust knew it, and then let it be supposed that conditions have changed so that (and the court will take judicial notice that they have so changed) no income of any substantial amount whatever could be obtained on savings bank deposits. Is there any doubt but that the court could very properly find that, under such circumstances, a primary intent and purpose of the creator of the trust would be defeated if the trustee were required to longer continue the investment in savings bank deposits? The answer is obvious.
A most important element to be considered in the instant case is the fact that the corpus of this trust at the time it was created consisted of preferred corporate stock (not bonds) which stock provided for an income of seven per cent., and that the trustee was to hold that stock until it was redeemed. This fact indicates that it would be no shock to the creator of the trust if at least a portion of the trust funds should be invested in stocks and it indicates that, when he used the language which he did, confining the investments to legals after retirement of the preferred stock, he must have had in mind the fact that the court might designate as "legals" securities other than those specifically mentioned in the statute.
Although I hold that the court of chancery always had jurisdiction to permit investments of trust funds in other than those specifically mentioned in the statute, that mere fact does not deprive chapter 45 of the laws of 1937, now R.S. 1937,3:16-17 and 18, of influence. Prior to the adoption of the statute, although the court had in some instances acted, there was a reluctance on the part of the court to act as is indicated by the cases. The legislature desired to make it clear by chapter 45 of the laws of 1937 that it recognized, not only that the court had jurisdiction to act, but that conditions were such, in the opinion of the legislature, as that the court, in proper cases, should act and it therefore expressly authorized the court in certain instances to act and provided for a method of procedure and the legislature desired to make it clear that, among the classes of investment which it thought might be authorized, were common and preferred stocks. The *Page 92 
legislature recognized by this act that conditions had become such as that, in order to maintain the integrity of a trust fund, it might be necessary to invest in common stocks and it intended to limit the power of the court in this respect (the inherent power of the court being unlimited) and hence inserted the provision in R.S. 1937, 3:16-18 "provided, that the court shall not authorize or direct the purchase of any class of common or preferred stock of any corporation unless such corporation shall have been organized and engaged in the conduct of its business for five calendar years immediately preceding the purchase of the stock of such corporation." Morris Community Chest v. Wilentz,124 N.J. Eq. 580; 3 Atl. Rep. 2d 808.
The legislature also intended to make it clear that it might be necessary to invest the whole of the funds of a trust in securities other than "legals" for it expressly conferred upon the court the power to authorize or direct the trustee of a trust to invest the whole, or such part thereof as "it shall designate, in any class or classes of investments, including common or preferred stocks of corporations of this state or of any other state or country, which in its judgment will promote the objects and purposes of the trust and the interests of all the beneficiaries thereof * * *."
That the legislature conceived that, under existing conditions, it might well be that investments should be made in common stock is clear else it would not have provided by chapter 45 of the laws of 1937, now R.S. 1937, 3:16-17 and 18, that such investments in common stock should be limited as by the statute provided. If the legislature had not conceived that it might well be, under existing conditions, that investments should be made in common stocks, there was no sense in the adoption of the legislation.
Under the statute investments in common stock cannot be made until all parties are called into court and heard and it is necessary that the type of securities in which investments are to be made should be submitted to the court and the court may control the percentage of the trust assets which may be invested in common stocks. The legislature recognized, as is the fact, that, in the light of the present chaotic conditions, *Page 93 
this was the only safe and practical course to pursue. Without the aid of the statute courts have authorized investments in securities other than so-called "legals."
In several New York cases trustees have been excused from making investments in securities as directed by the will. Thus, in Matter of Phair (N.Y., Kings County, Surrogate), N.Y. LawJournal (July 13th, 1934), 3 Prentice-Hall Trust Service15,714 § 15,706, the court said: "Paragraph `Third' of the present will requires that the executors invest two-thirds of the residuary estate in `Guaranteed first mortgages on New York City real estate.' In view of the present economic conditions of which the court takes judicial notice, I hold that the executors are relieved from such direction," citing Matter of Wallach,N YL.J. (December 8th, 1933) 2155, and cases cited; Matterof Loring, N.Y.L.J. (December 21, 1933) 2365; Matter ofWandler, N.Y.L.J. (March 21st, 1934); Matter of Wolburg,N YL.J. (June 7th, 1934) 2764.
The trustee in its memorandum concedes and indeed it is well settled in New Jersey that a court of equity, under certain circumstances, may deviate from the express terms of the trust in the interest of the beneficiaries. Newark Savings InstitutionCase, 28 N.J. Eq. 552; Fidelity Co. v. United Cos., 36 N.J. Eq. 405
(at p. 408); Pennington v. Metropolitan Museum of Art,supra; Price v. Long, 87 N.J. Eq. 578; New Jersey National Bankand Trust Co. v. Lincoln Mortgage and Title Guaranty Co.
(1930), 105 N.J. Eq. 557; 148 Atl. Rep. 713; Fidelity, c.,Co. v. The J.R. Shanley, c., Co., supra; Trust Company of NewJersey v. Glunz, 119 N.J. Eq. 73; 181 Atl. Rep. 27 (modified,121 N.J. Eq. 593; 191 Atl. Rep. 795, but not on the point here involved); and see 2 Perry on Trusts Trustees (7th ed.) §764, and cases cited.
In 3 Trusts Trustees, Bogert (1935) 2074 § 688, we have the following:
"The power of the court of equity to advise trustees with respect to their powers and duties in case of doubt extends to the giving of counsel with respect to the type of investments lawful under an ambiguous statute or instrument. The court also has power to sanction *Page 94 
a deviation from the normal course under a trust instrument with respect to trust investments where there is real need for such a change in order to prevent injustice. * * *
"The court may direct the trustee to invest contrary to the settlor's express instructions, either by purchasing a forbidden security or by failing to obtain for the trust an investment expressly favored by the settlor. Thus, the court may authorize a trustee to buy realty on foreclosure, although the terms of the trust would not make such an investment lawful, or direct a sale of stock in a jewelry corporation which the settlor had instructed the trustee to retain, or order the trustee of a New York estate to invest in local securities instead of following the settlor's desire that the small trust fund be invested in furnished cottages for Florida tourists. * * *
"The power to override the settlor's directions about investments is sparingly exercised by the courts. A real emergency must be shown. Danger of serious interference with the objects of the trust as originally founded must be apprehended. The court will not act merely for the purpose of increasing to a slight extent the safety of the principal or the amount of the income or simply for the purpose of accommodating a whim of thecestuis.
"In making any change in investments, the court should consider the welfare of both temporary beneficiaries and remaindermen. * * *"
In Marsh v. Reed, 184 Ill. 263; 56 N.E. Rep. 306, the supreme court of Illinois affirmed a decree in equity directing a trustee to execute a ninety-nine-year lease although the will provided that no lease should be made for longer than ten years.
Having reviewed the testimony taken before the master I find that the evidence fully sustains his finding.
The exceptions are dismissed and the master's report confirmed. *Page 95